UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN GONZALEZ, | * |
| Petitioner, | * |
| v. | * Civil Action No. 16-cv-10218-IT |
| LOIS RUSSO, | * |
| Respondent. | * |

MEMORANDUM & ORDER

September 18, 2019

TALWANI, D.J.

Before the court is Steven Gonzalez's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [#9]. In 2012, Petitioner was convicted of first-degree murder on the theory of deliberate premeditation and was sentenced to life in prison without the possibility of parole. He argues that his imprisonment is in violation of federal law based on ineffective assistance of counsel and improper instructions given to the jury. The court finds that Petitioner is not entitled to habeas review of his jury instruction claims because the claims were procedurally defaulted in state court and waived by Petitioner's failure to brief them here. The court does reach the merits of Petitioner's ineffective-assistance claim and finds that the state courts reasonably concluded that any errors by trial counsel did not violate Petitioner's rights under federal law. Accordingly, the petition is DENIED.

I. **Brief Factual and Procedural History**

Petitioner was arrested, tried, and convicted for the 2008 murder of Alexander Gautier. A complete accounting of the facts supported by the evidence presented at the trial is provided by the Massachusetts Supreme Judicial Court ("SJC") in its opinion denying Petitioner's appeal.

The following parts of this account are relevant here:

> The victim [Alexander Gautier] had controlled the sale of narcotics in the low-rise apartment buildings in the area of 244–266 Locust Street in Springfield, but left for Puerto Rico when a warrant issued for his arrest. In the victim's absence, Sammy Ramos (Sammy), a friend who operated an automobile dealership on Locust Street, took over the drug business on the block, and permitted others to sell drugs there, including two brothers, both named Jose Rodriguez. Also during the victim's absence, Jasson Gonzalez (Jasson) began selling drugs on the block without Sammy's permission and had other individuals, including Miguel Angel Nieves (known as Mikey), selling drugs for him. . . .
>
> . . . .
>
> The defendant was a heroin addict who supported his drug habit by theft, begging, and occasionally washing and detailing vehicles for Sammy at the dealership. He lived with his girl friend, Daneris Rivera (Daneris), in an apartment at 258 Locust Street. . . .
>
> . . . .
>
> Julia Rojas (Julia) is the former girl friend of Sammy's brother, and Sammy describes her as "like a daughter" to him.

Commonwealth v. Gonzalez, 473 Mass. 415, 416-17 (2015) (footnotes omitted).

> On October 17, 2008, the victim returned to Springfield and made clear his intent to regain control of his drug territory. At approximately noon, the victim met with Sammy at the dealership and stated his interest in meeting with the people who had been selling drugs in his territory without permission.
>
> . . . . While the victim was still at Sammy's dealership in the early afternoon, the victim spoke to the defendant in Sammy's presence. The victim told the defendant that he had to "stop stealing from the neighbors" or leave.

Id.

> At approximately 5 p.m. on October 17, 2008, a man approached the victim, Alexander Gautier, and shot him in the face at close range with a sawed-off shotgun, killing him. . . .
>
> . . . .
>
> After the shooting, both Sammy and Julia gave statements to the police. Julia described what had occurred, identified the defendant as the shooter, and provided a description of the shotgun used in the attack.

Id. From their reports, the jury could find the following:

> At approximately 4:30 p.m., Julia saw the defendant, whom she knew, speaking with Jasson and Mikey on the rear porch of the apartment building at 258 Locust Street. Shortly before 5 p.m., the victim and Sammy walked from the dealership

> to the area behind 258 Locust Street, accompanied by the two Rodriguez brothers. Once they arrived, Sammy told Mikey to get Jasson so they could talk. The six men—the victim, Sammy, the two Rodriguez brothers, Jasson, and Mikey—began talking while standing in a semicircle on the pavement behind 258 Locust Street.
>
> Julia was on the third-floor porch overlooking the back of 258 Locust Street, saw Sammy on the pavement with the others, and walked down the back stairs towards him. As she approached, she saw the defendant walk behind her wearing a black hooded sweatshirt and a mask. Sammy, who was standing next to the victim, also saw the defendant walk behind Julia and approach the group. As the defendant approached, Sammy saw him pull up a handkerchief from around his neck to cover his face. Once he reached the group, he pulled out a sawed-off shotgun and fired a single shot at the victim's face at close range, killing him. After the shotgun blast, Jasson, Mikey, and the Rodriguez brothers immediately scattered. Sammy testified that the defendant then pointed the shotgun at Sammy, who had fallen next to the victim, and told him, "This is not with you." . . .

Id. at 417.

Petitioner claims that he received ineffective assistance of counsel, at least in part, because his attorney failed to call two percipient witnesses—Julio Marcano and Officer Daniel Brunton. Pet'r's Mem. 10-14 [#27].

Mr. Marcano lived at the residence next door to the location of the shooting. Gonzalez, 473 Mass. at 423. After hearing the shotgun blast, he called 911 to report gunfire. Id. While on the phone with the dispatcher, approximately a minute after the shot was fired, he used a chair to look over the fence so that he could see the area the sound of the shot emerged from. Id. He described what he saw contemporaneously to the dispatcher. As summarized by the SJC, Mr. Marconi reported:

> three "Spanish" people, including one female, walking east away from the body. At that moment, he noticed another "Spanish guy" walking "real fast" away from the body. Marcano thought that this person was involved in the shooting because he looked "real nervous" and "wanted to get out of there." That person walked up the back stairs to one of the buildings, pushed aside a group of people on the second-floor porch, and went into an apartment. The man looked to be in his early thirties, was dark skinned, and had short hair pulled into a small ponytail.

Id. Petitioner notes that this physical description does not describe him since he had light-colored

3

skin and wore his hair cut short. Pet'r's Mem. 11 [#27].

Mr. Gonzalez avers that testimony from another credible witness, Officer Brunton, is in "unity" with the account from Mr. Marcano. Id. Officer Brunton was a first-responder on the scene "moments" after the shooting. Gonzalez, 473 Mass. at 423. According to Officer Brunton's written report, a person on scene informed Officer Brunton that the shooter had fled into a particular apartment, and a team of officers, including Officer Brunton, investigated. Id. As the SJC describes it:

> Officer Brunton and four fellow officers went up the rear stairs to that apartment, and while they remained outside the rear door, one of his fellow officers saw two Hispanic males inside the kitchen. When Officer Brunton knocked on the door, the two men fled the apartment. Officer Brunton then forced open the rear door of the apartment, but the officers were unable to locate the two individuals.

Id.

Petitioner claims that these two versions of events, which could have been retold had his attorney called these eyewitnesses to testify, would be able to "contradict" the testimony of the eyewitnesses who identified him, testimony that he called "scripted" and "doubtful." Pet'r's Mem. 12 [#27]. Furthermore, Petitioner argues, this testimony, if it had been offered, would augment the significance of other fact issues that, he believes, casts doubt upon his guilt. Id. at 12-14.

Petitioner also argues that he received ineffective assistance with his alibi defense, which he views as central to his claim that he was not the shooter. Id. at 4-10. . Petitioner claimed that at the time of the shooting (approximately 5 P.M.), he was helping his girlfriend, Daneris Rivera, move her clothes into a storage unit in Suffield, Connecticut. Gonzalez, 473 Mass. at 420. At trial, he refreshed his recollection that he was with Ms. Rivera in Suffield at that specific time by reviewing a receipt memorializing a transaction at the Connecticut storage facility. Id. at 419-

4

20.[1] Ms. Rivera did not testify, and no other evidence was offered to corroborate Petitioner's claim that Ms. Rivera was not by herself at the time. Id. at 419-21.

Petitioner further testified that after spending time with Ms. Rivera, he visited with Carol Adorno. Id. at 419. Ms. Adorno lived with Petitioner's oldest sister at the time of the shooting. Id. Ms. Adorno, who was not interviewed regarding her testimony before she was called as a witness, testified that Petitioner arrived at her house at approximately 3:30 P.M. on the day of the shooting and remained there until nighttime. Id. at 419-20. Ms. Adorno further testified that she was with Petitioner at the house the entire time, except for a brief period when she and her husband left to retrieve Ms. Rivera's broken-down vehicle. Id. at 419. These two accounts of Petitioner's time were inconsistent and the prosecutor noted this inconsistency in his closing argument. Id. at 421 ("So he's in Connecticut with his girlfriend at 5:01, and he's at Carol Adorno's house at 3:00. Which is it?"). In Petitioner's estimation, the testimony provided by Ms. Adorno "undermined [his] entire defense." Pet'r's Mem. 7 [#27].

On August 3, 2012, a Hampden County Superior Court jury convicted Petitioner of first-degree murder on the theory of deliberate premeditation.

Following the conviction, Petitioner moved for a new trial partly based on the same claims brought here. Gonzalez, 473 Mass. at 420. The trial court denied Petitioner's motion and Petitioner appealed that denial. Petitioner also brought a direct appeal of the underlying conviction to the Massachusetts Supreme Judicial Court ("SJC") and the SJC consolidated the direct appeal of the conviction with Petitioner's appeal of the denial of his motion for a new trial.

In the consolidated appeal, Petitioner raised eight different challenges to his conviction,

---

[1] The receipt, which only had Ms. Rivera's name on it, was only used to "refresh" Petitioner's memory; it was not entered into evidence. Gonzalez, 473 Mass. at 421.

four of which underly the present petition. On December 30, 2015, the SJC affirmed the denial of the Petitioner's motion for a new trial and affirmed Petitioner's conviction. Gonzalez, 473 Mass. at 429. On February 5, 2016, Petitioner filed the instant Petition for a Writ of Habeas Corpus [#9].

The petition requests that this court grant the writ on at least one of four claims: (1) that his attorney's failure to interview Ms. Adorno before calling her to testify constituted ineffective assistance of counsel; (2) that his attorney's decision to not call Mr. Marcano and Officer Brunton constituted ineffective assistance of counsel; (3) that the trial judge's failure to provide an alibi instruction to the jury brought about an unlawful murder conviction; and (4) that an erroneous jury instruction shifted onto the Petitioner the burden of proof on shooter identification. Pet. 5-10 [#9]. Respondent's Memorandum in Opposition [#37] contests the merits of each of Petitioner's claims, and also argues that the jury instruction claims are not subject to review because they have been procedurally defaulted.

## II. Discussion

### a. Availability of Habeas Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), an application for a writ of habeas corpus will not be granted on behalf of a person in custody pursuant to the judgment of a state court "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Exhaustion requires that, before seeking habeas relief, a Petitioner present, or do his best to present, the substance of a federal habeas claim "fairly and recognizably" to the state's highest tribunal. Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997). This provides the state the first "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Duncan

v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (internal citations omitted).

All the claims brought before the court in this habeas petition have been exhausted; there are no other state remedies available to Petitioner. Every claim included in the petition was presented both in his motion for a new trial and in his appeal of the conviction. The SJC addressed each of these and adjudicated them on their merits in the opinion issued December 30, 2015. Gonzalez, 473 Mass. at 420-25.

      b.  Relief Based on Jury Instructions

Respondent argues that grounds three and four of the petition are barred as a result of procedural default. Resp't's Mem. 22-25 [#37].

Procedural default occurs when a state prisoner has "exhausted his state remedies without obtaining any decision on the merits of his federal constitutional claim because he has failed to comply with state procedural rules on how the claim must be raised." 17B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4266 (3d ed. 1998). In other words, procedural default will result in a situation in which a Petitioner may have exhausted all state remedies but is still not entitled to habeas review because of his failure to comply with state procedural rules.

Massachusetts Rule of Criminal Procedure 22 "generally requires objections at trial in order to preserve claims of error. If a claim is not objected to at trial, it is waived." Commonwealth v. Robinson, 480 Mass. 146, 156 (2018). Here, as the SJC explained, Petitioner failed to raise contemporaneous objections to the jury instructions that he later challenged on appeal. Gonzalez, 473 Mass. at 425 (noting that, in relation to Petitioner's jury instruction claims, "[n]one were preserved by a contemporaneous objection"). As a result, Petitioner is procedurally defaulted from raising those objections now.

7

The SJC went on to address the merits of the jury instruction claims under a discretionary "miscarriage of justice" standard. See Gonzalez, 473 Mass. at 425. Under this analysis, the SJC concluded that the instructions, as rendered by the trial court, did not constitute a miscarriage of justice. Id. at 425-26. The SJC's election to review the claims under this discretionary standard "does not amount to a waiver of the state's contemporaneous objection rule" or absolve the procedural default for the purpose of habeas review. See Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010); see also Beard v. Kindler, 558 U.S. 53, 60 (2009) ("We hold that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review").

Procedural default is not an absolute bar to habeas relief. Petitioners can still have their claims heard in federal court if they can demonstrate cause and prejudice for their failure to comply with state rules of procedure. Janosky, 594 F.3d at 44.[2] However, Petitioner has not provided any argument demonstrating cause and prejudice that can excuse him from procedural default so as to obtain federal habeas review for the jury instruction claims. While ineffective assistance of counsel has been recognized by the Supreme Court as one avenue by which a petitioner may establish cause for a procedural default, see Murray v. Carrier, 477 U.S. 478, 488 (1986), Petitioner has *not* claimed ineffective assistance of counsel as cause for the procedural default. Even more, the court cannot raise the argument for him, even if it were inclined to do so, because Petitioner did not assert before the SJC that his failure to preserve the objection was the result of ineffective assistance. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding

---

[2] A federal habeas court may also excuse procedural default if a petitioner can demonstrate that failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). This would require an extraordinary showing, such as evidence that there has been a constitutional violation that has resulted in the conviction of an individual who is actually innocent. See Murray v. Carrier, 477 U.S. 478, 496 (1986). No facts or argument in the petition lend support for a claim that this extraordinary bypass is applicable here.

8

that "ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). For these reasons, the court finds that habeas review is not available for Petitioner's claims concerning the jury instructions.

Although superfluous given the court's finding that Petitioner's objections to the jury instructions are procedurally defaulted, the court has reviewed the conclusions of the SJC with regards to the objections raised by Petitioner. The court does not find the SJC's resolution to be unreasonable or contrary to clearly established federal law.

Respondent argues further that Petitioner has waived any claims regarding the jury instructions due to his failure to brief them beyond the pleadings in the petition. Resp't's Mem. 21-22 [#37]. The absence of briefing on grounds three and four of his petition is particularly salient because Petitioner was ordered to file a separate brief on the merits of his petition after his petition was filed. Order [#22]. The court agrees that Petitioner has waived his rights to these claims in this habeas proceeding. See Powell v. Tompkins, 783 F.3d 332, 349 (1st Cir. 2015) (deeming an argument as waived for the purpose of habeas relief when the Petitioner failed to indicate how the state's resolution was violative of federal constitutional law, including the failure to "cite to any Supreme Court authority . . . to grapple with the SJC's analysis at all").

    c. <u>Relief Based on Ineffective-Assistance Claims</u>

In contrast to the jury instruction claims, Petitioner is entitled to this court's review of his ineffective-assistance claims under AEDPA. Petitioner's claim of ineffective assistance was addressed, on the merits, by the SJC. Accordingly, it is Petitioner's burden to show that the SJC's evaluation of his ineffective-assistance claim "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1); see also Yeboah-Sefah v. Ficco, 556 F.3d 53, 70–71 (1st Cir. 2009) ("Since an ineffective assistance of

9

counsel claim is a mixed question of law and fact, it is evaluated under the 'unreasonable application' clause of § 2254(d)") (citations omitted). "An unreasonable application of federal law occurs when the state court identifies the correct legal principle, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply." Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008) (citations omitted). Petitioner does not argue that the SJC unreasonably extended clearly established legal principles nor does he argue that it unreasonably refused to extend established principles. Accordingly, the only inquiry is whether the SJC applied the legal principles governing ineffective assistance in an objectively unreasonable manner.

Under the federal constitution, counsel is ineffective if Petitioner can show that his attorney exhibited deficient performance that resulted in prejudice to the defendant. Strickland v. Washington, 466 U.S. 668, 692 (1984). In evaluating Petitioner's claims of ineffective assistance, the SJC evaluated the claims under the framework provided by Massachusetts law for review of capital cases. Gonzalez, 473 Mass. at 420 (referencing MASS. GEN. LAWS ANN. ch. 278, § 33E (West 2012)). Under this standard, the SJC examined "whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion." Gonzalez, 473 Mass. at 420 (citing Commonwealth v. Wright, 411 Mass. 678, 681 (1992)). The First Circuit has held that the Wright standard applied by the SJC in such instances "is at least as protective of defendants as the federal ineffective assistance of counsel standard" and thus it is appropriate to "presume the federal law adjudication to be subsumed within the state law adjudication."

Yeboah-Sefah, 556 F.3d at 71 n.7 (internal citations omitted).

The court will address the two components of Petitioner's ineffective-assistance claims in turn.

### i. Calling Carol Adorno as a Witness

Petitioner argues that his trial counsel rendered ineffective assistance of counsel by calling Carol Adorno as an alibi witness without interviewing her and knowing her testimony before she gave it. Pet'r's Mem. 5 [#27]. According to Petitioner, doing so "undermined [Petitioner's] entire defense and thereby failed to subject the prosecution's case to meaningful adversarial testing." Id. at 10. This, Petitioner avers, constituted ineffective assistance under federal constitutional law. Id. at 9 (citing United States v. Cronic, 466 U.S. 648, 659 (1984)).

The SJC concluded that counsel erred by not knowing what Ms. Adorno would testify to before calling her, but found no prejudice to defendant. Gonzalez, 473 Mass. at 421. Following a careful review of the relevant circumstances, the SJC found that "defense counsel's decision to call Adorno to testify was not likely to have influenced the jury's verdict because the defendant's alibi, had it stood alone, was unsupported, lacking in credibility, and at odds with the significant evidence pointing to him as [the] person who shot [the victim]." Id. (internal citations omitted). As a result, the SJC was "convinced that Adorno's testimony did not likely influence the jury's verdict." Id. at 422.

As noted above, this court can only grant Petitioner his requested relief if the SJC applied the federal ineffective-assistance standard "unreasonably." The court finds nothing objectively unreasonable about the SJC's determination that Petitioner did not suffer prejudice as a result of his trial counsel's conduct.

    *ii. Failing to Call Julio Marcano and Officer Daniel Brunton as Witnesses.*

  Petitioner similarly argued that his trial counsel's failure to call Julio Marcano and Officer Brunton constitutes ineffective assistance. According to Petitioner, the observations of these two credible individuals would contradict the testimony by those who identified Petitioner as the shooter because the shooter described by these witnesses did not fit Petitioner's physical characteristics. Pet'r's Mem. 13 [#27]. Petitioner further speculates that because of other evidence that, he asserts, contradicts the testifying eyewitnesses accounts, the jury would have found the testimony of Officer Brunton and Julio Marcano to be the more probable version of events. Id. at 12-13.

  Again, the SJC did not agree. In this instance, the SJC did not address whether counsel's decision not to call the two witnesses was error. Gonzalez, 473 Mass. at 424. However, it did find that even if the two witnesses had testified to everything in their written accounts, there was no direct contradiction between the proffered testimony and the testimony that the government relied on to secure a conviction. Id. As for Mr. Marcano's testimony, the SJC found that "because the victim had just been shot in the face at close range with a sawed-off shotgun in a drug-related shooting, there could be many reasons why a man other than the shooter would walk quickly and appear nervous in fleeing the scene." Id. As for Officer Brunton's account, the SJC found that "the evidence he would have offered would not have been inconsistent with the defendant being the shooter." Id. As a result, with regards to both Julio Marcano and Officer Brunton, the SJC was convinced that calling the witnesses "would not likely have affected the jury's verdict." Id. As with the SJC's analysis regarding the calling of Ms. Adorno, the court finds nothing objectively unreasonable with how the SJC came to the conclusion that counsel's decision to not call these witnesses did not prejudice the Petitioner. Accordingly, he is not

12

entitled to habeas relief.

        d. <u>Request for an Evidentiary Hearing</u>

Petitioner also moves for an evidentiary hearing to "determine the decisive and operative facts upon which a denial of Gonzalez's [federal constitution claims] could legitimately be based." Pet'r's Mem. 14 [#27].

The court's jurisdiction to hold an evidentiary hearing on Petitioner's habeas claim is severely constrained by statute. This ensures that the federal courts do not become "an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." <u>Williams v. Taylor</u>, 529 U.S. 420, 437 (2000). The limited instances in which an evidentiary hearing may be appropriate involve cases where § 2254(d) does not bar relief. For example, if the state court did not review the merits despite exhaustion of the claim, AEDPA allows the habeas court to exercise de novo review and if appropriate, to hold an evidentiary hearing. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 186 (2011). Another possible instance where an evidentiary hearing may be appropriate is where a petitioner *does* have a successful claim under § 2254(d) for a constitutional violation and an evidentiary hearing is helpful for resolving whether such violation amounted to structural error or caused actual prejudice. <u>See</u> <u>Jackson v. Marshall</u>, 864 F.3d 1, 14 (1st Cir. 2017). Neither of these identified exceptions apply to the present circumstances since the court has not identified any ground subject to this court's de novo review and has concluded that the state court has resolved the grounds raised by Petitioner in a manner that was not unreasonable. Because Petitioner "cannot clear the hurdle of § 2254(d) based on the record that was before the state court, an evidentiary hearing under § 2254(e) is not allowed." <u>Id.</u> (citing <u>Cullen</u>, 563 U.S. at 185). Thus, the limited jurisdiction this court has to supplement the state court record by holding an

evidentiary hearing is not present and the request for an evidentiary hearing is necessarily denied.

**III.** **Conclusion**

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus [#9] and request for an evidentiary hearing is DENIED.

IT IS SO ORDERED.

September 18, 2019 /s/ Indira Talwani
United States District Judge